## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

SAMANTHA BROCK,

     Plaintiff                 Case No: _____

vs                            Honorable       _____

                               Magistrate Judge    _____

BRUNSCH & SONS, L.L.C.
d/b/a JIMMY JOHN'S

and

THOMAS BRUNSCH,
Jointly and Severally

     Defendants

_____/

## COMPLAINT
## AND REQUEST FOR JURY

## INTRODUCTION

Plaintiff Samantha Brock is a former restaurant manager at Jimmy John's in Jackson, Michigan, owned and operated by Brunch & Sons, L.L.C. ("Jimmy John's). She asserts federal claims against Jimmy John's and its owner for violations of the Emergency Paid Sick Leave Act, including failure to pay COVID-19 sick leave and retaliatory termination. Plaintiff asserts supplementary state law

claims for wrongful termination under the Michigan Whistleblowers' Protection Act and in violation of Michigan's public policy.

While working in November 2020 Brock experienced COVID-19 symptoms, reported that to management, left work early as instructed, and arranged to be tested the next day. She tested positive and reported that fact to Jimmy John's management and continued her sick leave as instructed by a manager.

Brock then learned from a senior manager that Thomas Brunsch, the owner and managing member of Jimmy John's, had falsely reported to the Jackson County Health Department that Plaintiff had not worked during the week prior to testing positive. That senior manager asked Brock to contact the health department and provide truthful information regarding her work hours, which Plaintiff did.

A health department contacted Brunsch with this information and he then terminated Plaintiff's employment without paying her sick leave and in retaliation for her report to the health department.

## PARTIES AND VENUE

1. Plaintiff Samantha Brock is a resident of the state of Michigan and resides in the Eastern District of Michigan.

2. Defendant Brunsch & Sons, L.L.C. is a Michigan limited liability company doing business as Jimmy John's, with its principal place of business located in the Eastern District of Michigan ("Jimmy John's").

3. Defendant Thomas Brunsch ("Brunsch") is a resident of the state of Michigan and resides in the Eastern District of Michigan. Brunsch is both a member of and the managing member of Jimmy John's.

4. Venue is proper because the parties reside or have their principal place of business in the Eastern District of Michigan and the actions alleged in this Complaint occurred in this district.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. §1331 because Brock asserts federal law claims under the Emergency Paid Sick Leave Act, ("EPSLA"), enacted at part of the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, § 5101 *et seq*, 134 Stat. 178 (2020). Violations of EPSLA are deemed violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. ("FLSA") and afford employees the remedies and enforcement mechanisms available under FLSA.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## COMMON ALLEGATIONS

7.   Plaintiff' was employed by Jimmy John's.

8.   Plaintiff worked at its restaurant located at 2101 W. Michigan Avenue, Jackson, Michigan.

9.   In November 2020 Brock was a 2nd Assistant Manager, assigned to an afternoon/evening shift.

10.   On the afternoon of November 19, 2020, while working at Jimmie Johns, Brock experienced loss of her sense of taste and smell during her meal break.

11.   Brock suspected she may have COVID-19.

12.   Brock alerted her shift manager.

13.   At her shift manager's instruction, Brock left Jimmie Johns prior to the end of her scheduled shift.

14.   When she arrived home, Brock made an appointment to be tested for COVID-19 the next day, Saturday, November 20th, at Henry Ford Allegiance.

15.   Brock submitted to the test as scheduled.

16.   Brock was not scheduled to work again until the afternoon of Sunday, November 22nd.

17. On November 19th, after scheduling her own test, Brock informed individuals residing in a household where Brock sometimes stayed overnight that she may have COVID-19 and suggested they get tested.

18. Two of those individuals arranged to be tested, and received positive results on Saturday, November 20th. Those individuals informed Brock of their positive results.

19. Via text message, on Saturday, November 20th Brock informed Jimmy John's general manager, Doug Bowden, that she had submitted to a COVID-19 test.

20. By text message reply, Bowden informed Brock that if she tested positive, she would be required to not work for two weeks.

21. By text message Brock informed Bowden that regardless of the results of her own test she would need to quarantine because individuals in a household where she stayed had COVID-19.

22. By text message Bowden informed Brock that Jimmy John's would require her test results.

23. Brock agreed to provide the results.

24. Brock received her tests the morning of Sunday, November 21, 2020.

25. Brock tested positive for COVID-19.

26. Prior to the start of her scheduled shift that day, Brock informed Bowden that she had tested positive.

27. Prior to the start of her scheduled shift that day Brock provided her COVID-19 test results to Bowden via text message.

28. Brock continued her leave, as she had been instructed by Bowden.

29. Another Jimmy John's manager, Patrick Brunsch, who is Defendant Brunsch's son, informed Brock that Jimmy John's would contact the Jackson County Health Department and inform them that an employee had tested positive for COVID-19.

30. Defendant Brunsch made the report to the health department.

31. Brunsch told the health department that a Jimmy John's employee had tested positive for COVID-19.

32. Brock was the employee in question.

33. Brunsch falsely told the health department that Brock had not worked at Jimmie John's during the week prior to testing positive.

34. Brunsch's false reporting placed Jimmie John's customers, employees, and the public at risk by potentially thwarting contact tracing efforts and limiting the sharing of vital public health information concerning COVID-19 and the coronavirus.

35. In the days immediately prior to testing positive Brock was infectious and potentially capable of transmitting the coronavirus to co-workers and customers of Jimmy John's.

36. In November 2010 Brunsch knew that individuals with COVID-19 are infectious during the days prior to testing positive, and potentially capable of transmitting the coronavirus to those with whom the come in contact.

37. Brunsch's false statements to the health department were intentional.

38. Brunsch's false statements were intended to minimize the scope of inquiry by the health department.

39. Brunsch's false statements to the health department were intended to avoid potential testing and quarantine of Jimmy John's employees, thereby permitting Jimmy John's to continue operations, generate revenue, and avoid paying emergency paid sick leave to other employees.

40. Brunsch's false statements to the health department were intended to avoid the need to potentially inform the public and Jimmy John's customers that a Jimmy John's employee had been working while infectious, permitting Jimmy John's to attract and retain customers who might otherwise avoid or stop patronizing Jimmy John's.

41. Brunsch's son, Patrick Brunch, was aware that his father lied to the health department about Brock's work hours during the week prior to her positive COVID-19 test.

42. On November 23, 2021, Patrick Brunsch contacted Brock by phone and made her aware of his father's false report to the public health department.

43. Patrick Brunsch asked Brock to contact the health department and provide accurate information regarding her work history.

44. Patrick Brunsch was reluctant to contact the health department himself and report his father's dishonesty.

45. Patrick Brunsch provided Brock with the name and phone number of the health department official to contact.

46. Brock contacted that official on November 23, 2020. The two spoke by phone that day.

47. Brock informed the official that she had, in fact, worked at Jimmie John's during the week prior to testing positive for COVID-19 and that the information Brunsch had provided to the health department about her work hours was false.

48. The health department official informed Brock that the official would need to contact Brunsch to address the inaccurate information he had provided regarding her work hours.

49. After speaking with the public health official Brock sent a text message to Patrick Brunsch informing him that she has spoken with the public health official and that the official would be calling Jimmy John's.

50. In a text message reply Patrick Brunsch thanked Brock.

51. The public health department official then contacted Brunsch and made him aware that the health department had received information from an employee that Brock had worked the week prior to testing positive for COVID-19.

52. After being contacted by the health department with this information Brunsch terminated Brock's employment.

53. At the time Brunsch terminated Brock's employment she remained on leave.

## COUNT I - VIOLATION OF EMERGENCY PAID SICK LEAVE ACT
(Intentional Refusal to Pay Sick Leave)

54. Plaintiff incorporates by reference each of the preceding allegations in this Complaint.

55. Jimmy John's is a covered employer within the meaning of EPSLA and FLSA.

56. Brock was an employee within the meaning of EPSLA and FLSA.

57. Brock commenced a sick leave for reasons which entitled her to receive emergency paid sick leave under EPSLA.

58. Jimmy John's did not pay Brock emergency paid sick leave.

9

59. Brunsch directed payroll for Jimmy John's.

60. Brunsch signed Brock's paychecks from Jimmy John's.

61. Defendants' actions in not paying Brock emergency paid sick leave were intentional.

62. As a direct and proximate cause of Defendants' violation of EPSLA, Brock sustained damages.

63. Brock's damages include, *inter alia*, lost wages, emotional and mental harm, and legal expenses.

64. Brock seeks all damages permitted by law including back paid sick leave, statutory liquidated damages, compensatory and punitive damages, attorney fees, expenses, costs, and interest.

## COUNT II - VIOLATION OF EMERGENCY PAID SICK LEAVE ACT
### (*Retaliatory Discharge*)

65. Plaintiff incorporates by reference each of the preceding allegations in this Complaint.

66. Brock commenced leave from Jimmie John's on the afternoon of November 19, 2020 when she left the restaurant prior to the end of her scheduled shift as instructed by her shift manager.

67. Brock's leave was for a purpose which qualified her for paid sick leave under EPSLA.

68. Defendants' terminated Brock's employment while she was on leave.

69. Defendants' terminated Brock's employment because she was on leave.

70. Defendant's actions were intentional.

71. Defendants' actions were retaliatory.

72. Under EPSLA, termination of employees who take sick leave under EPSLA is deemed to be a violation of the anti-retaliation provisions of FLSA.

73. As a direct and proximate cause of Defendants' intentional violation of EPSLA, Brock sustained damages.

74. Brock's damages include, *inter alia*, lost wages and benefits, lost bonuses, emotional and mental harm, embarrassment and humiliation, loss of reputation and standing in the community, and legal expenses.

75. Brock seeks all damages permitted by law including back pay, front pay (or reinstatement in lieu thereof), compensatory damages, punitive damages, attorney fees, expenses, costs, and interest.

## COUNT III – MICHIGAN WHISTLEBLOWER PROTECTION ACT
(Retaliatory Discharge)

76. Plaintiff incorporates by reference each of the preceding allegations in this Complaint.

77. Defendants are each an employer within the meaning of the Michigan Whistleblowers' Protection Act, MCL 15.361 *et seq.* (the "WPA").

78. Brock was an employee withing the meaning of the WPA.

79. In contacting the public health department and informing it that Brunch had provided false information, Brock was reporting a violation or suspected violation of a law, rule and/or regulation of the United States, the State of Michigan, and/or one of their political subdivisions or agencies.

80. In contacting the public health department and in providing information in response to its queries, Brock was participating in its investigation of a COVID-10 exposure at Jimmy John's.

81. Brock actions are protected activity under the WPA.

82. Alternatively, Defendants terminated Brock's employment because she contacted the public health department and reported that Brunsch had provided false information to the health department and provided other information to the health department in response to its queries.

83. Defendants' actions violated the WPA.

84. As a direct and proximate cause of Defendants' violation of WPA, Brock sustained damages.

85. Brock's damages include, *inter alia*, lost wages and benefits, lost bonuses, emotional and mental harm, embarrassment and humiliation, loss of reputation and standing in the community, and legal expenses.

86. Brock seeks all damages permitted by law including back pay, front pay (or reinstatement in lieu thereof), compensatory damages, exemplary damages, punitive damages, attorney fees, expenses, costs, and interest.

## COUNT IV - TERMINATION IN VIOLATION OF PUBLIC POLICY
### (*Wrongful Discharge*)

87. Plaintiff incorporates by reference each of the preceding allegations in this Complaint.

88. The Governor of the State of Michigan, by Executive Order 2020-36 and subsequent Executive Orders, declared it the public policy of the State of Michigan that "an employer shall not discharge, discipline, or otherwise retaliate against an employee for staying home when he or she is at particular risk of infecting others with COVID-19."

89. The public policy of the State of Michigan against taking adverse employment action against employees who follow public health directives is further embodied in Michigan's public health laws, rules, and regulation.

90. For a period following her positive COVID-19 test Brock was at particular risk of infecting others with COVID-19 if she returned to work because of the close and extended contact she would have had with Jimmy John's employees, vendors, and customers.

91. Defendants knew that Brock was on leave because she had experienced symptoms of and later tested positive for COVID-19.

92. Defendants knew or should have known that for a period following her positive COVID-19 test Brock was at particular risk of infecting others with COVID-19 if she returned to work.

93. Alternatively, Defendants terminated Brock because she stayed home rather than working her scheduled shifts, during a time when she was at particular risk of infecting others with COVID-19.

94. Defendant's actions were intentional and wrongful and in violation of the established public policy of the State of Michigan.

95. As a direct and proximate cause of Defendants' actions, Brock sustained damages.

96. Brock's include, *inter alia*, lost wages and benefits, lost bonuses, emotional and mental harm, embarrassment and humiliation, loss of reputation and standing in the community, and legal expenses.

97. Brock seeks all damages permitted by law including back pay, front pay (or reinstatement in lieu thereof), compensatory damages, exemplary damages, punitive damages, attorney fees, expenses, costs, and interest.

### RELIEF REQUESTED

PLAINTIFF REQUESTS that this Court enter judgment against Defendants, jointly and severally to the extent permitted by law, and provide relief as follows:

1. **Equitable relief**

    a.  injunctive relief proscribing future violations of the WPA.

    b.  injunctive relief requiring Defendants to adhere to and comply with all laws, rules, and regulations regarding operations by restaurants related to the coronavirus pandemic and COVID-19 adequate notice return of all of Plaintiff's seized property.

    c.  injunctive relief awarding front pay or, to the extent the Court determines not to award front pay, requiring reinstatement of Brock's employment with full pay and benefits and any increases in compensation or benefits she would have been eligible to receive is she had remained employed.

    d.  such further preliminary and final injunctive relief as deemed warranted by the Court.

2. **Legal relief**

    a. an award of unpaid sick leave.

    b. an additional award of statutory liquidated damages in the fullest amount permitted by law, but not less than an amount equal to the unpaid sick leave.

c. compensatory damages in whatever amount Plaintiff is found to be

  entitled.

c. punitive and exemplary damages to the extent permitted by law.

d. an award of pre- and post- judgment interest, costs, expenses, and

  attorney fees.

## JURY REQUEST

Plaintiff requests trial by jury.

Dated: February 21, 2021        Respectfully submitted,

/s/ Jeffrey L. Herron\_\_\_\_

Jeffrey L. Herron
Attorney for Plaintiff
440 Burroughs St. Suite 606
Detroit, MI 48202
(734) 277-0913
herronlawgroup@gmail.com